## THE GULF STREAM.[1]

### THE KNIGHT.

#### INLAND & SEABOARD COASTING CO. *v.* THE GULF STREAM.

(*District Court, S. D. New York.* October 24, 1890.)

COLLISION—STEAM-VESSELS CROSSING—CHANGE OF COURSE—DUTY TO STOP AND BACK.
The steam-ship K., on a course of N. E. by N., ½ N., made the green light of the steam-ship G. S. about half a point off her own port bow, and thereupon ported her helm. The G. S., on a course of S. by W., ¾ W., made both colored lights of the K. half a point on her starboard bow. She thereupon starboarded, and ran until she shut out the red light, but soon after it reappeared, when the G. S. hard a-starboarded, but collision occurred soon after. Neither vessel at any time slackened speed. *Held,* that the vessels were on crossing courses, and, under article 15 of the collision rules, it was the duty of the G. S. to keep out of the way, and of the K. to hold her course. The latter's swing to starboard was therefore a fault contributing to the collision; and, as the reappearance of the red lights of the K. should have shown to the G. S. that there was danger of collision by the starboard swing of the K., it was the duty of the G. S. thereupon, under article 18, to stop and back; and for her failure so to do she also was in fault. The damages were therefore divided.

In Admiralty. Suit for damages occasioned by collision between the steam-ships Gulf Stream and Knight.

*Owen & Gray,* for libelants.

*Biddle & Ward,* for claimants.

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

BROWN, J. In this case the two steamers were going in nearly opposite directions, differing therefrom by not more than three-fourths of a point, the Knight going N. E. by N., ½ N.; the Gulf Stream S. by W., ¾ W. The vessels made each other's lights when several miles distant. The Knight made the green light of the Gulf Stream about half a point off her own port bow, and ported her helm, and she did not see the red light of the Gulf Stream at all. The Gulf Stream first saw, about half a point on her starboard bow, both colored lights of the Knight. She then changed her course one point to port, and ran some distance until she shut out the red light for a short time; but soon after the red light again appeared, along with the green, when she hard a-starboarded, and the collision occurred shortly after. The Knight was all the time porting her wheel, until at the collision she headed about E. by N. When she ported, she gave a signal of one whistle, which was not heard by the Gulf Stream. Neither vessel stopped, nor even slowed her engine. Under article 15 of the new rules of navigation, these vessels were on crossing courses; as respects the Knight, because she saw only the other's green light; and as respects the Gulf Stream, because the two colored lights were not seen ahead, but from half a point to a point and a half on her own starboard bow, for a considerable time before any risk of collision commenced, so that she showed to the Knight only her own green light. By articles 16 and 22, therefore, it was the duty of the Gulf Stream to keep out of the way, and of the Knight to keep her course. The Knight disobeyed this rule by porting. This manifestly contributed to bring about the collision, and she is, on that ground, in fault. It seems to me equally clear that the Gulf Stream was also in fault in not observing the eighteenth article, which, under the above circumstances, required her to slacken her speed or to stop and reverse when they approached near each other. The Gulf Stream, when at a considerable distance, had changed her course one point to port, so as to bring the Knight about a point and a half on her starboard bow. As the vessels approached each other, and the Knight had broadened off considerably upon the starboard bow, she again showed to the Gulf Stream her red light, as well as her green light as before. This was the clearest possible evidence that a collision was threatened through the failure of the Knight to keep her course, and that she was endeavoring to cross the bow of the Gulf Stream. The officer in charge so understood it. It was his duty, under such circumstances, by article 18, to stop and back. There was ample opportunity to avoid collision by doing this after the course of the Knight was evident, as is shown both by the direct testimony, and by the further swing of three to four points by the Gulf Stream before collision. Instead of observing this duty, the Gulf Stream put her helm hard a-starboard, and continued on with unabated speed until the vessels struck. Both must therefore be held in fault, (*The Frisia*, 28 Fed. Rep. 249; *The Khedive*, L. R. 5 App. Cas. 876; *The Beryl*, 9 Prob. Div. 137, 142; *The Aurania*, 29 Fed. Rep. 124,) and the damages and costs divided.